NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIOLA MOORE,<br><br>*Plaintiff*,<br>v.<br>BANK OF AMERICA, NA, et al.,<br><br>*Defendants*. | Civil Action No. 18-13727<br><br>OPINION |

**THIS MATTER** comes before the Court on Defendant Bank of America, N.A.'s ("BoA") Motion to Dismiss Plaintiff's Complaint, and on Defendant J.P. Morgan Chase Bank N.A.'s ("JPMC") Motion for Judgment on the Pleadings. For the reasons that follow, BoA's motion is GRANTED IN PART, and JPMC's motion is GRANTED.

**I.     Background**

   **A.     Factual Background**

This action arises from an alleged fraud perpetrated by a construction contractor on a landlord whose property had recently burned down.

Plaintiff is the owner of real property located at 77 East 21st Street in Bayonne, New Jersey (the "Property"). Compl. Ex. D at 3.[1]  On July 11, 2015, a fire partially destroyed a

---

[1] Plaintiff originally filed this action in state court, attaching six exhibits to her complaint. Under Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," and consideration of these exhibits does not convert a motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 12(d). The Third Circuit has held that affidavits attached to a pleading are not the sort of "written instruments" contemplated by Rule 10(c), and should not be considered on a motion to dismiss. Rose v. Bartle, 871 F.2d 331, 339 n.3 (3d Cir. 1989). "[T]he types of exhibits incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence,

building on the Property.  Id.  After Plaintiff submitted an insurance claim, her insurer paid $295,000 for the lost building.  Id.  The Property was subject to a mortgage in favor of BoA, which required Plaintiff to deposit the insurance proceeds in an escrow account at BoA, which she did.  Compl. ¶¶ 14-15 & Ex. D at 1-2.

In an attempt to rebuild the structure, Plaintiff contacted Universal Sales Consultant, Inc. ("Universal Sales") and two of its representatives, Alex Duque and Edward Giguere.  Compl. at 1 & Ex. D at 2.  On or about July 31, 2015, she engaged Universal Sales, contracting with it to rebuild her building.  Compl. Ex. D at 2.  Over the next several months, the project "stalled and delayed," which Universal Sales attributed to the the City's land use and building departments. Id.  Plaintiff contacted the City regarding the delay, and discovered that Universal Sales never sought any approvals.  Id.  In January 2016, Plaintiff terminated Universal Sales.  Id.

Plaintiff then contacted BoA, which informed her that BoA had drawn two checks on the insurance proceeds:  one for $152,000 dated September 16, 2015, and another for $25,000, dated October 28, 2015. Compl. Ex. A.  Each check named both Universal Sales and Plaintiff as payees, and bore endorsements from Plaintiff and a stamped endorsement from Universal Sales. Id.  Plaintiff alleges that her endorsement was forged, and that the checks were presented to JPMC, which paid them.  Compl. ¶¶ 20-21.  She alleges that she never authorized BoA to release funds to Universal Sales.  Id. ¶¶ 3-4.

---

specifically, contracts, notes, and other 'writing[s] on which [a party's] action or defense is based.'" Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1327, at 489.). Exhibit B is a "Certification of Viola Moore," a sworn narrative in numbered paragraphs in which Plaintiff explains her version of the facts in this case.  Compl. Ex. B.  As this exhibit is materially identical to an affidavit, the Court will not consider it on the present motions.  The remaining exhibits, however, consist of writings on which Plaintiff's claim relies, and therefore will be considered as a part of her Complaint under Rule 10(c).

After discovering the two checks, BoA directed Plaintiff to file fraud claims with its fraud department. Id. ¶¶ 58-60. Plaintiff alleges that ultimately, BoA stopped communicating with her. Id. ¶ 61. At some point during this investigation, BoA provided Plaintiff with a "Forged Formal Authorization," which granted "permission to release ongoing funds to [Universal Sales]."[2] Id. ¶ 103. She alleges that this letter was forged by defendant "John Doe"[3] and presented to BoA. Id. ¶ 104.

---

[2] The letter is undated but appears to have been received via fax on September 4, 2015. The full text of the letter reads:

"Viola Moore
Ref # 91707007
77 East 21st Street
Bayonne NJ 07002

Bank of America
BAC Home Loans Servicing LP
Property Claim Department

Please Note this letter as formal Authorization for:

Universal Sales Consultants Inc. / Alexander Duque.
1123A RT 23 SOUTH WAYNE NJ 07470
855-360-5750

Mention Company will be handling the current ongoing fire recovery process on named property and any Bank Related processes that should be require in order to successfully complete same project.

Regards,

/s/ Viola Moore

Viola Moore. Compl. Ex. F.

[3] Plaintiff alleges that "John Doe shall be inserted to represent," inter alia, Universal Sales, Giguere and Duque, if the Court determines them to be indispensable parties. Compl. at 1. This is not a proper use of the John Doe Rule. See N.J. Ct. R. R. 4:26-4 ("if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification"). However, Plaintiff's use of fictitious name pleading is not relevant to the issues presented on this motion.

Plaintiff alleges that JPMC "tendered a refund on September 21, 2017, citing the forged endorsement signature as the cause for the return of funds to [BoA]." Compl. ¶ 96. In this action, she seeks damages arising from the approximately two-year period when she was deprived of the use of the insurance proceeds.

### B. Procedural History

On February 6, 2018, Plaintiff commenced this action in New Jersey Superior Court, asserting eleven causes of action: (1) failure to exercise ordinary care and substantially contributing to loss from a negotiable instrument, in violation of Uniform Commercial Code ("UCC") § 3-404, N.J.S.A. § 12A:3-404[4], Compl. ¶¶ 1-11; (2) negligence contributing to the alteration of an instrument or the making of a false signature in violation of UCC § 3-406, Compl. ¶¶ 12-23; (3) breach of the UCC's check presentment warranties against JPMC only, in violation of UCC § 3-417, Compl. ¶¶ 12-30; (4) conversion in violation of UCC § 3-420, Compl. ¶¶ 31-39; (5) improperly making a payment from Plaintiff's account, against BoA only, in violation of UCC § 4-401, Compl. ¶¶ 40-45; (6) common law breach of contract against BoA only, Id. ¶¶ 46-54; (7) common law fraud, including a claim of fraudulent concealment by a fiduciary against BoA, Id. ¶¶ 64-68, and for a "fraudulent negotiable instrument paid or taken" against JPMC, Id. ¶¶ 69-73; (8) common law breach of fiduciary duties by BoA, Id. ¶¶ 74-89; (9) common law claims of bad faith and fair dealing, Id. ¶¶ 90-101; (10) common law negligent misrepresentation, Id. ¶¶ 102-11; and (11) a common law claim of civil conspiracy, Id. ¶¶ 112-15.

On September 10, 2018, BoA removed the action to this Court, invoking its diversity jurisdiction. See Notice of Removal, ECF No. 1. These motions followed.

---

[4] New Jersey has codified articles three and four of the UCC at N.J.S.A § 12A. For brevity, future citations to New Jersey's UCC will only include the prefix "UCC."

## II. Legal Standards

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 8, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). In considering a Rule 12(b)(6) motion to dismiss, the court accepts all of the facts in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id.

However, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B. Motion for Judgment on the Pleadings Standard

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) should be granted if the movant establishes that "there are no material issues of fact, and he is entitled to judgment as a matter of law." Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017) (internal quotation marks omitted). The standard is "substantively identical to that of a motion to dismiss; the difference between the two is procedural—a motion for judgment on the pleadings is filed after the pleadings are closed, and a motion to dismiss is

filed in lieu of an answer." Luna v. Weiner, No. 05-2298, 2006 WL 2570837, at *3 (D.N.J Sept. 6, 2006). "All reasonable inferences must be made in the non-moving party's favor." N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc., 141 F. Supp. 3d 298, 302 (D.N.J. 2015). "The motion should not be granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 (3d Cir. 2004) (citation and internal quotation marks omitted).

**III. Analysis**

Counts I through V of the Complaint raise claims under the UCC. Each of these counts — other than Count V — fail to state a claim. Counts VI through IX and XI are displaced by the UCC's remedies in the check collection process, and Count X, while not displaced, separately fails as a matter of law.[5]

    **A.    Plaintiff Fails Uniform Commercial Code Claims**

        **1.    Plaintiff Fails to State a Claim under UCC § 3-404**

Count I alleges that BoA failed to exercise ordinary care and substantially contributed to Plaintiff's loss by issuing the two checks, and that JPMC also failed to exercise ordinary care substantially contributing to her loss by paying the two checks, with the forged endorsements. Count I, Compl. ¶¶ 2-3, 8-9. She further alleges that both defendants failed to exercise ordinary care in investigating her complaints. Id. ¶¶ 10. Section § 3-404(d) provides a cause of action

---

[5] No party has addressed which state's law should apply to this diversity action, although both parties cite to New Jersey's substantive law. "A district court sitting in diversity must apply the choice of law rules of the forum state." Bedi v. BMW of N. Am., LLC, No. 15-1898, 2016 WL 324950, at *3 (D.N.J. Jan. 27, 2016) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). The Court agrees with the parties that New Jersey's substantive law applies here. Adkins v. Sogliuzzo, No. 09-1123, 2013 WL 5468970, at *3 (D.N.J. Sept. 30, 2013) (citing Chin v. Chrysler LLC, 538 F.3d 272, 278 (3d Cir. 2008)).

against a person who fails to exercise ordinary care in paying or taking a check, if either subsection (a) or (b) applies. UCC § 3-404(d). Because Plaintiff has not sufficiently alleged that either subsection applies, Count I does not state a claim.

### i. UCC § 3-404(a)'s Impostor Rule Is Inapplicable

Subsection (a), commonly referred to as the Impostor Rule, applies if an impostor[6] induces the drawer of a check to issue it to the impostor, by impersonating the payee or someone authorized to act for the payee. UCC § 3-404(a).[7] The official comment explains that "the effect of subsection[] (a) . . . is to place the loss on the drawer of the check rather than on the drawee or the depositary bank" because the "drawer is in the best position to avoid" the impostor's fraud and "should take the loss." Id. Cmt. 3.[8] Subsection (d) is intended to alter this result where "the person taking the check might have detected the fraud and thus have prevented the loss by the exercise of ordinary care." Id.

For subsection (a) to apply, Plaintiff must allege both that an impostor impersonated either a payee of a check or their agent, and that the impostor induced the issuer to draw the checks. Hibernia Nat. Bank v. Commerce Bank, 368 N.J. Super. 144, 149 (App. Div. 2004) (requiring a showing of both impersonation and inducement by the impersonation before UCC § 3-404(a) applies). Plaintiff has failed to do so.

---

[6] The term "impostor" is not defined in the UCC, but means one who misrepresents their identity. See Impostor, Black's Law Dictionary (10th ed. 2014) ("Someone who pretends to be someone else to deceive others, esp. to receive the benefits of a negotiable instrument").

[7] UCC § 3-404(a) reads: "If an impostor, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the impostor, or to a person acting in concert with the impostor, by impersonating the payee of the instrument or a person authorized to act for the payee, an indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection."

[8] This comment also applies to subsection (b). See UCC § 3-404 Cmt. 3.

Plaintiff does not allege that any person impersonated Universal Sales or any of their agents. She alleges that "John Doe" submitted a forged letter to BoA which could be read as authorizing Universal Sales and John Doe to act as her agents, and pursuant to that letter, BoA issued the two checks. Compl. ¶¶ 5-6, 7, 103-04 & Ex. F.

However, misrepresentations of agency, even using forged documentation, are not sufficient to invoke the Impostor Rule, which requires a misrepresentation of identity. Although the New Jersey Supreme Court has not yet addressed the question of whether the Impostor Rule applies where a person only misrepresents his or her agency, the issue has been addressed by the Appellate Division. Interpreting the prior version of the Impostor Rule, UCC § 3-405(a)(1) (1961),[9] the court held that an attorney who forged his clients' signatures on a number of settlement agreements, inducing insurance companies to issue settlement drafts to him, was not acting as an "impostor." Clients' Sec. Fund of Bar of New Jersey v. Allstate Ins. Co., 219 N.J. Super. 325, 333 (App. Div. 1987). The court reasoned that the Impostor Rule

> must be limited to the clear case where there has been an imposture which induces the issuance and delivery of an instrument to the impostor or his confederate. The term "impostor" refers to "impersonation" and does not extend to a false representation that the party is the authorized agent of the principal.

---

[9] The current, revised version of the UCC was issued in 1990 and adopted in New Jersey in 1995. This version extended the Impostor Rule to cases where the impostor impersonates the agent of a principal. See UCC § 3-404 Cmt. 1. Courts interpreting whether Impostor Rule applies to misrepresentations of agency under the revised Code have held that the new statute does not alter this construction. See Title Ins. Co. v. Comerica Bank - California, 27 Cal. App. 4th 800, 807 (1994) (commentary to the updated UCC "makes it clear that impersonation is still required to invoke the impostor rule, whether the perpetrator of the deception pretends to be the principal or the agent. Misrepresentation of the perpetrator's agency status does not suffice"); King v. White, 962 P.2d 475, 482 (Kan. 1998) (same); see also Intelogic Trace Texcom Grp., Inc. v. Merchants Nat. Bank, 626 N.E.2d 839, 846 (Ind. Ct. App. 1993) (discussing revised code and noting that "[w]hen a person honestly identifies him or herself, but falsely states that he or she is an agent of another, the person is misrepresenting his or her status; when a person impersonates a real agent, the person is impersonating another, that is, he or she is misrepresenting his or her identity.").

Id. at 331 (citing UCC § 3-405 Cmt. 2 (1961)).[10] This interpretation of the rule is consistent with the majority of state courts to consider the question: the Supreme Courts of Utah, Kansas and Nebraska have taken the same position. King, 962 P.2d at 482. (Impostor Rule inapplicable where attorney misrepresented to insurance company that he was authorized to settle claim for client as the attorney did not misrepresent his identity); Valley Bank & Tr. Co. v. Zions First Nat. Bank, 656 P.2d 425, 427 (Utah 1982) (Impostor Rule "does not extend to a false representation that a party is the authorized agent of the payee"); Maddox v. First Westroads Bank, 256 N.W.2d 647, 653 (Neb. 1977) (Impostor Rule inapplicable where fraudster "did not pose as plaintiffs' guardian, but acted, or purported to act, as their agent").

This interpretation applies even where the fraudster presents a check issuer with a forged signature of his or her alleged principal and induces the issuer to issue a check to the fraudster. Title Ins., 27 Cal. App. 4th at 806. In Title Insurance Co., the California Court of Appeal held that a son who forged his mother's signature on a power of attorney and applied for a home equity loan on her behalf was not acting as an impostor because "[a] person's false representation that he or she is an agent of the payee is not sufficient." Id. at 805. Courts in Alabama,[11]

---

[10] The New Jersey Study Comment 3 to the 1961 UCC notes that the Impostor Rule "does not extend to situations in which someone acquires paper made to the order of a payee by falsely representing that he is the agent of the payee." UCC § 3-405 New Jersey Study Cmt. 2 (1962). The comment further notes that this position was in accordance with New Jersey law prior to the adoption of the UCC. Id.

[11] East Gadsden Bank v. First City National Bank of Gadsden, 281 So. 2d 431, 433 (Ala. Civ. App. 1973) (Impostor Rule inapplicable where a fraudster obtained a check for a car loan by forging the signature of a representative from a local car dealership on a purchase order for a vehicle.).

Florida,[12] Illinois,[13] Maryland,[14] and New York[15] have applied this interpretation of the rule, as did the Ninth Circuit. Lewis v. Tel. Employees Credit Union, 87 F.3d 1537, 1548 (9th Cir. 1996).

While a minority of states have reached the opposite result, see, e.g., Minster State Bank v. BayBank Middlesex, 611 N.E.2d 200, 201 (Mass. 1993) (Impostor Rule applied where a husband forged wife's signature on loan application documents and letter)[16]; Fair Park Nat. Bank v. Sw. Inv. Co., 541 S.W.2d 266, 268 (Tex. Civ. App. 1976) (Impostor Rule applied where fraudster forged seller's signature of on bill of sale to obtain bank loan), writ refused NRE (Jan. 5, 1977); Intelogic, 626 N.E.2d at 846 (fraudster who submitted financial documents with forged name of a principal to obtain loan acted as an impostor), the Court is satisfied that the New Jersey Appellate Division decision in Clients' Security Fund represents the likely view of the New Jersey Supreme Court.

Because Plaintiff does not allege that someone misrepresented her identity as opposed to her authority, § 3-404(a) does not apply.

---

[12] Broward Bank v. Commercial Bank of Hollywood, 547 So. 2d 687, 689 (Fla. Dist. Ct. App. 1989) (husband who "did not represent to [bank] that he was the authorized agent for his wife" and executed mortgage documents in wife's name did not act as an impostor of his wife).

[13] Advocate Health & Hospitals. Corp. v. Bank One, N.A., 810 N.E.2d 500, 506 (Ill. App. Ct. 2004) (Impostor Rule inapplicable where an attorney obtained check by misrepresenting his authority to settle a case for a client and forged client's signature on covenant not to sue).

[14] Bank of Glen Burnie v. Elkridge Bank, 707 A.2d 438, 440 (Md. Ct. Spec. App. 1998) (finding impostor rule inapplicable where fraudster obtained loan for commercial vehicles by submitting various forged documents to bank making loan).

[15] Leonard Smith, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, 495 N.Y.S.2d 769, 772 (N.Y. App. Div. 1985) (representation of fraudster to plaintiff that he was an agent of an insurance company, inducing plaintiff to issue a check, did not invoke the impostor rule.).

[16] The Court reached this result by relying on language in the statute stating that an impostor can impersonate another "not in the literal 'in person' sense, but 'by use of the mails or otherwise,' as stated in § 3–405(1)(a)." Minster, 611 N.E.2d at 202.

### ii. UCC § 3-404(b) Is Inapplicable

Alternatively, Plaintiff alleges that BoA and JPMC violated UCC § 3-404(b) by issuing the checks without authorization and paying out funds on a forged endorsement. Compl. ¶¶ 1-11. Subsection (b) applies if a drawer of a check does not intend the payee to have any interest in it, or if the payee is a fictitious person. § 3-404(b). Here, Plaintiff alleges—and the checks included as exhibits to her Complaint confirm—that the "person whose intent determines to whom [the check] is payable" is BoA.[17] Compl. ¶¶ 3, 5-7, Ex. A. Plaintiff alleges that BoA intended both herself and Universal Sales have an interest in the two checks, and does not allege that either payee is fictitious. Compl. ¶¶ 3, 4, 8.[18] Subsection (b) of § 3-404 is therefore inapplicable.

Thus, as Plaintiff does not allege that either check is an "instrument to which subsection a. or b. of [§ 3-404] applies," she cannot state a claim under § 3-404(d), and Count I is dismissed. UCC § 3-404(d).

### 2. Plaintiff Fails to State a Claim under UCC § 3-406

In Count II, Plaintiff alleges that BoA and JPMC failed to exercise ordinary care and substantially contributed to an alteration of a check, in violation of UCC § 3-406. Compl. ¶¶ 12-23. Section 3-406(a) precludes a person "whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an

---

[17] The "person whose intent determines to whom an instrument is payable" is defined in UCC § 3-110(a): "The person to whom an instrument is initially payable is determined by the intent of the person, <u>whether or not authorized</u>, signing as, or in the name or behalf of, the issuer of the instrument." (emphasis added). Plaintiff's allegation that BoA "never received authorization" to issue the checks is of no moment: the issuer's intent determines to whom the instrument is payable regardless of authorization. Compl. ¶¶ 3-4.

[18] In her brief, Plaintiff concedes BoA "admitted its intent to pay funds to [Universal Sales], an unauthorized payee." Pl. Mem. Opp. at 6

instrument" from "asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection." UCC § 3-406(a). Defendants argue that § 3-406 does not create a cause of action, but provides a defense to a claim of negligence. The Court agrees.

As the commentary makes clear, "Section 3-406 does not make the negligent party liable in tort for damages resulting from the alteration." Id. Cmt. 1. Courts have also interpreted § 3-406 to "provide[s] a statutory defense rather than a legal basis for liability" and have dismissed claims seeking to use the provision to assert an affirmative cause of action. Adams v. Allstate Life Ins. Co., No. 16-9465, 2017 WL 3578552, at *4 (D.N.J. Aug. 18, 2017). Count II is therefore dismissed.

### 3. Plaintiff Fails to State a Claim under UCC § 3-417

Count III of Plaintiff's complaint seeks recovery—from JPMC only—under UCC § 3-417, entitled "Presentment warranties." This provision is divided into several subsections: subsection (a) lists warranties that the person "obtaining payment or acceptance" makes when presenting a check for payment to a drawee, and subsection (b) permits either a "drawee making payment" or an "acceptor" to recover damages from any such warrantor. UCC § 3-417(a), (b). Subsection (d)(2) also permits a "person making payment on a draft" to recover from a warrantor for breach of warranty. Id. (d)(2). The only causes of action created in § 3-417 run in favor of either a "drawee," "acceptor," or "person making payment on a draft." Since Plaintiff does not allege that she meets any of these definitions, Count III must be dismissed.

The statute defines a "drawee" as "a person ordered in a draft to make payment," and an "acceptor" is "a drawee who has accepted a draft." UCC § 3-103(1), (2). Plaintiff does not allege that she is either. See Compl. Ex. A. And even if Plaintiff could somehow allege that she

were the one "making payment" on the checks because they were ostensibly issued at her direction from funds designated to repair her property, her claim would still fail because "[u]nder New Jersey law, the Code warranties contained in Section[] 3–417 . . . do not run to the drawer." Bank Polska Kasa Opieki, S.A. v. Pamrapo Sav. Bank, S.L.A., 909 F. Supp. 948, 955 (D.N.J. 1995).

    **4.**    **Plaintiff Is Barred by the UCC from Stating a Claim for Conversion**

In Count IV, Plaintiff alleges that BoA "converted funds" from her "account without claim of right or proper authorization" and that JPMC "improperly paid out funds on a forged check, effectively converting $177,000" of Plaintiff's funds, in violation of UCC § 3-420.[19] Compl. ¶¶ 34, 38. JPMC argues that § 3-420(b) precludes Plaintiff from stating a conversion claim because she has alleged that JPMC returned the money to BoA. Compl. ¶ 108 ("upon Chase's notification of legal action, Chase tendered a refund of the forged checks to Ms. Moore's account."). The Court agrees.

Section 3-420(b) states that "[i]n an action under subsection a. of this section, the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument." § 3-420(b). Where "the amount payable on the checks has been satisfied under the U.C.C," claims under § 3-420 "are subject to dismissal." A.A. Action Collection Co. v. Dweck, No. 11-00364, 2015 WL 5722582, at *4 (D.N.J. Sept. 28, 2015) (holding that Plaintiff could not state a claim under § 3-420 because it had recovered a greater sum than the value of the checks at issue), dismissed (Jan. 5, 2016).

---

[19] This provision states, in relevant part, that "[t]he law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than by negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." UCC § 3-420(a).

Since Plaintiff alleges that JPMC repaid the same amounts to BoA, recovery is barred by § 3-420(b). Count IV is therefore dismissed.

### 5. Plaintiff Has Stated A Claim that the Two Checks Were Not Properly Payable

In Count V, Plaintiff's alleges that BoA violated UCC § 4-401 when it released funds from the insurance proceeds without her authorization. Compl. ¶¶ 40-45. BoA argues that Plaintiff cannot state a claim under this provision because "the Complaint does not indicate that Plaintiff was the owner of the account which was charged for the two checks." BoA Mem. at 8. The Court disagrees.

Section 4-401 permits banks to charge customers' accounts for items that are "properly payable," and states that an "item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." UCC § 4-401(a). The plain language of the statute does not require a plaintiff to be an owner of the account, but rather to be a "customer" of the bank. The term "customer" means "a person having an account with a bank or for whom a bank has agreed to collect items." UCC § 4-104(a)(5).

Thus, the Third Circuit has held that an individual other than an account holder may state a claim under § 4-401, if he or she can provide some agreement or other evidentiary basis substantiating their status as a "customer." Barak v. Obioha, 74 F. App'x 164, 166 (3d Cir. 2003) (partner could assert § 4-401 claim on partnership's account despite not being "owner" of account, dismissing claim due do plaintiff's failure to provide a "sufficient documentary or evidentiary basis" to establish he was a customer); see also Am. Ins. Co. v. Fidelity Bank & Tr. Co. of N.J., 244 N.J. Super. 600, 604 (App. Div. 1990) (surety with joint control agreement with the owner of bank account itself qualified as a "customer" and could assert § 4-401 claim).

At this stage, Plaintiff has adequately alleged that she is a "customer" of BoA. She alleges that BoA held the insurance proceeds pursuant to a contract with her, and paid out the funds without her authorization or "coming to agreeance" with her. Compl. ¶¶ 43, 48. BoA's motion to dismiss is denied as to Count V.

## IV. Plaintiff's Common Law Claims

### A. Plaintiff's Common Law Claims Against JPMC are Displaced by the UCC

Counts VI through XI assert common law claims. BoA and JPMC argue that all such claims are displaced by New Jersey's adoption of the UCC, which supplies the sole remedy for cases involving the check collection process or claims by customers against their banks.

The Court agrees with JPMC that Plaintiff's common law claims against it are wholly displaced. The UCC "provides a comprehensive framework for allocating losses when a forged check enters the negotiation process. Only in very rare instances should a court upset the legislative scheme of loss allocation and permit a common law cause of action." Bank Polska, 909 F. Supp. at 956 (citing Girard Bank v. Mount Holly State Bank, 474 F. Supp. 1225, 1239 (D.N.J. 1979)). In the check collection arena, where a non-customer seeks to assert common law claims against a financial institution in addition to those provided for by the UCC, they must show that "the facts establish a special relationship between the parties created by agreement, undertaking or contact, that gives rise to a duty," and if they do not, "the sole remedies available are those provided in the Code." City Check Cashing, Inc. v. Manufacturers Hanover Tr. Co., 166 N.J. 49, 62 (2001). A showing that there was an agreement or undertaking will "give rise to a duty with respect to the subject agreed upon or undertaken. Whether a contact creates a duty is determined by its nature and surrounding circumstances." Id.

Plaintiff's common law claims against JPMC fail, because she does not allege that there was any "agreement, undertaking or contact" between herself and JPMC. Lembo v. Marchese,

No. A-4048-17T2, 2019 WL 1750932, at *2 (N.J. App. Div. Apr. 16, 2019). As against JPMC, Counts VII, X and XI are dismissed.

### B. Plaintiff's Common Law Claims Against BoA are Displaced by the UCC or Fail to State a Claim

Plaintiff argues that she should be able to state common law claims against BoA because she is a customer of the bank. Pl. Mem. at 9. The Court disagrees.

Courts have extended the rationale of City Check Cashing to require bank customers to have a special relationship with the bank before may assert common law against them. A.A. Action Collection Co., 2015 WL 5722582, at *4 (granting summary judgment against bank customer "because no special relationship was created, Plaintiff's common law claims are displaced by the U.C.C.,"); Adkins, 2013 WL 5468970, at *5 (beneficiaries of estate of bank customers could not assert common law claims against banks because the testators "were simply customers of the Banks, and that no 'special relationship' existed"); see also Estate of Paley v. Bank of Am., No. A-4391-07T3, 2011 WL 1598974, at *9 (N.J. App. Div. Apr. 29, 2011) (bank customer "failed as a matter of law to establish a special relationship," precluding her estate from asserting claims under New Jersey's Consumer Fraud Act.).

Here, Plaintiff cannot have a "special relationship" with BoA simply by being a customer. Her only allegations of a "special relationship" with BoA are her conclusory claims that the bank held her insurance proceeds in "escrow" or "in trust." Compl. ¶¶ 15, 49, 65, 79, 87. These allegations are insufficient to allege a fiduciary relationship. Mercado v. Bank of Am., N.A., No. 12-01123, 2012 WL 5629749, at *4 (D.N.J. Nov. 15, 2012) (plaintiff's "fiduciary duty claims rest entirely on conclusory allegations that the Court must disregard for purposes of the motion to dismiss").

But were the Court to consider these allegations, without more, she would still fail to establish a fiduciary relationship. "The general rule is that there are no presumed fiduciary relations between banks and their customers." Margulies v. Chase Manhattan Mortg. Corp., No. A-4087-03T3, 2005 WL 2923580, at *3 (N.J. Super. Ct. App. Div. Nov. 7, 2005) (quoting United Jersey Bank v. Kensey, 306 N.J. Super. 540, 552 (App. Div. 1997)); Kowalsky v. Deutsche Bank Nat'l Tr. Co., No. 14-07856, 2015 WL 5770523, at *3 (D.N.J. Sept. 30, 2015) (allegations that plaintiff and defendants "share a debtor-creditor relationship by way of the Mortgage and Note" insufficient to establish fiduciary relationship on motion to dismiss.). Debtors may be able to allege that their creditors are fiduciaries if they can show "'special circumstances' where the lender 'knows or has reason to know that the customer is placing his trust and confidence in the lender and relying on the lender to counsel and inform him.'" Cole v. Wells Fargo Bank, N.A., 2016 WL 1242765, at *4 (D.N.J. Mar. 30, 2016) (quoting United Jersey Bank, 704 A.2d at 44) (citation omitted).

Here, Plaintiff has not alleged that she placed trust and confidence in BoA or relied on it to counsel her. She alleges nothing more than a standard creditor-debtor relationship in the form of a mortgage. Her allegations that BoA placed the insurance proceeds in an escrow account does not establish a fiduciary relationship, because provisions in a mortgage permitting the mortgagee to hold funds in escrow do not establish a fiduciary relationship. These are "contractual provision[s]" which exist "primarily for [the mortgagee's] benefit to assure preservation of its collateral, [and do] not establish a fiduciary relationship." Margulies, 2005 WL 2923580, at *3. Plaintiff does not allege any other facts suggesting a special relationship with BoA. Plaintiff has failed to allege a "special relationship" existed between herself and BoA,

and consequently she cannot assert claims in addition to those available under the UCC. Counts VI,[20] VII,[21] VIII, IX,[22] and XI[23] are dismissed.

In Count Ten, Plaintiff alleges a common law claim for negligent misrepresentation. Although her claim is difficult to discern, she seems to allege that BoA "negligently provided false information to [Plaintiff] stating she gave authorization to release funds to John Doe." Compl. ¶ 107. BoA argues that Plaintiff fails to state a claim because her Complaint alleges that she knew the statements BoA made to her were false, and therefore she could not have justifiably relied on them. The Court agrees.

"To establish a claim for negligent misrepresentation, a plaintiff must show '[a]n incorrect statement, negligently made and justifiably relied on, [and] economic loss or injury sustained as a consequence of that reliance.'" Pharm-Rx Chem. Corp. v. BMP, No. 15-08276,

---

[20] Count VI is a common law breach of contract claim. Plaintiff first alleges that BoA breached its fiduciary duties to her by failing to provide her with an accounting for the insurance proceeds. Compl. ¶ 49. For the reasons stated above, Plaintiff has failed to allege the existence of a fiduciary relationship between herself and BoA, and this portion of her claim must be dismissed. Plaintiff then alleges that BoA disbursed funds from the escrow account which were not "properly payable." Id. ¶¶ 50-54. This is duplicative of Plaintiff's UCC § 4-401, and is precluded by the UCC.

[21] Count VII, a common law claim for fraudulent concealment by a fiduciary, and Count VIII a common law claim for breach of fiduciary duty by BoA, both assert claims connected to either the improper payment of funds from Plaintiff's account, or fraud in connection with the disbursement of the insurance proceeds, and are displaced by the remedies created by the UCC. Compl. ¶¶ 64-68,74-81.

[22] Count Nine asserts that BoA breached the common law duty of good faith and fair dealing implied in every contract. Compl. ¶¶ 90-101. Her Complaint is entirely unclear as to which contract Plaintiff alleges BoA breached by allegedly acting in bad faith, but to the extent that she alleges that this term was implied in the same agreement that determines whether funds from her account were "properly payable," her claim is displaced by § 4-401.

[23] Count Eleven, which claims that BoA and JPMC "worked together to defraud [Plaintiff] from funds earmarked for the re-construction of her building" is a paradigmatic example of a claim precluded by the UCC, as it attempts to find additional common law liability in the check collection arena, where the UCC already has detailed rules apportioning liability.

2019 WL 1434721, at *6 (D.N.J. Mar. 31, 2019) (quoting Green v. Morgan Properties, 215 N.J. 431, 457 (2013)). "Under New Jersey law, an essential element of both fraudulent and negligent misrepresentation is justifiable or reasonable reliance on the other party's misrepresentation." Stolba v. Wells Fargo & Co., No. 10-6014, 2011 WL 3444078, at *4 (D.N.J. Aug. 8, 2011). Here, because Plaintiff cannot demonstrate any reliance on the false information provided by BoA, she fails to state a claim. Count X is dismissed.

**V.     Conclusion**

It is therefore **ORDERED** that the BoA's motion to dismiss, ECF No. 4, is **GRANTED** as to all counts other than Count V, as to which the motion is **DENIED,** and that JPMC's motion for judgment on the pleadings, ECF No. 8, is **GRANTED**.

*/s Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**